United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KAMLESH BANGA,

       Plaintiff,

   v.

CHEVRON U.S.A. INC., et al.,

       Defendants.

Case No.: C-11-01498 JCS

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING DISH NETWORK'S REQUEST FOR ATTORNEYS' FEES; STRIKING PLAINTIFF'S REFERENCES TO CHEVRON'S MEDIATION BRIEF**

I.    INTRODUCTION

    On November 8, 2010, Plaintiff Kamlesh Banga ("Plaintiff") filed a complaint against Defendants Chevron U.S.A. Inc. ("Chevron"), Dish Network L.L.C. f/k/a/ EchoStar Satellite L.L.C. ("Dish Network"),  Capital One Bank (USA), N.A. ("Capital One"), and HSBC Bank Nevada, N.A. ("HSBC") (collectively "Defendants").[1]  Plaintiff alleged that each defendant obtained her credit report from Equifax, a credit reporting agency, through promotional inquiries but failed to extend her a firm offer of credit in violation the federal Fair Credit Report Act ("FCRA") and California's Consumer Credit Reporting Agencies Act ("CCRAA").

    Four motions are presently before the Court:  1) Chevron's Motion for Summary Judgment ("Chevron Motion"); 2) Dish Network's Motion for Summary Judgment ("Dish Network Motion"); 3) Capital One's Motion for Summary Judgment ("Capital One Motion"); and 4) HSBC's Motion for Summary Judgment ("HSBC Motion").  The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).  For the reasons discussed below, Defendants' Motions are granted.

---

[1] In the Complaint, Plaintiff identified Dish Network as EchoStar and HSBC as Household Bank.

## II.     REQUESTS FOR JUDICIAL NOTICE

In conjunction with their motions, Chevron, Dish Network, and Capital One all filed requests for judicial notice.  Chevron requested judicial notice of (1) Plaintiff's Complaint in this action; (2) Plaintiff's October 8, 2009 complaint filed against Equifax in the United States District Court, Northern District of California, Case No. C09-04807 JSW ("the Equifax Action"); and (3) the January 25, 2011 district court order granting Equifax summary judgment in the Equifax Action.  Chevron's Request for Judicial Notice ("Chevron RJN"), 1-2. Dish Network requested judicial notice of (1) Plaintiff's October 8, 2009 complaint in the Equifax Action; (2) the January 25, 2011 district court order granting Equifax summary judgment in the Equifax Action; and (3) certain factual findings and the holding of the January 25, 2011 district court order.  Dish Network's Request for Judicial Notice ("Dish Network RJN"), 1-2.  Capital One requested judicial notice of (1) the declaration of Brian J. Olson ("Olson Declaration") filed by Equifax on October 26, 2010 in conjunction with its motion for partial summary judgment in the Equifax Action; (2) the declaration of Vicki Banks filed by Equifax on October 26, 2010 ("2010 Banks Declaration") in conjunction with its motion for partial summary judgment in the Equifax Action; and (3) the January 25, 2011 district court order granting Equifax summary judgment in the Equifax Action.  Capital One's Request for Judicial Notice ("Capital One RJN"), 1-2.

Plaintiff filed objections to the Dish Network RJN and the Capital One RJN.  Plaintiff argued that the documents identified by Dish Network and Capital One could be noticed for their existence, but not the truth of their contents.  Plaintiff's Objection to Dish Network's Request for Judicial Notice, 1-3 (citing *California ex. rel. Lockyer v. Migrant Corp.*, 266 F.Supp.2d 1046, 1053 (N.D. Cal. 2003), *aff'd*, 375 F.3d 831 (9th Cir. 2004), cert. denied, 544 U.S. 974, 125 S.Ct. 1836, 61 L.Ed.2d 724 (2005); *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 440 (9th Cir. 2010)); Plaintiff's Objection to Capital One's Request for Judicial Notice, 1-2 (citing the same cases).  Only Capital One replied to Plaintiff's Objection, arguing that this Court may consider the content of the declarations and court order it requested noticed.  Capital One's Response to Plaintiff's Objection to Request for Judicial Notice, 1 (citing *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2nd Cir.

1 1999) (considering an unsworn letter for the purposes of a summary judgment motion because it

2 constituted a declaration pursuant to 28 U.S.C. § 1746)).

3        Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to

4 reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial

5 court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

6 reasonably be questioned." Court filings and orders are the type of documents that are properly

7 noticed, but notice is taken "only for the limited purpose of recognizing the 'judicial act' that the

8 order [or filing] represents on the subject matter of the litigation." *United States v. Jones*, 29 F.3d

9 1549, 1553 (11th Cir. 1994) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d

10 1384, 1388 (2d Cir. 1992)); *see also San Luis v. Badgley*, 136 F.Supp.2d 1136, 1146 (E.D. Cal. 2000)

11 (a court "may take judicial notice of a document filed in another court not for the truth of the matters

12 asserted in the litigation, but rather to establish the fact of such litigation and related filings"). In

13 accordance with these limitations, the Court grants judicial notice of (1) Plaintiff's October 8, 2009

14 complaint in the Equifax Action; (2) the 2010 Banks Declaration filed in the Equifax Action; (3) the

15 Olson Declaration filed in the Equifax Action; and (4) the January 25, 2011 district court order

16 granting the defendant summary judgment in the Equifax Action. The Court denies judicial notice of

17 the Complaint in this case because it is already a part of the record.

18 III.     DECLARATION OF VICKI BANKS

19        Defendants each filed a declaration by Vicki Banks ("Banks") dated August 14, 2012 ("Banks

20 Declaration") with their moving papers.[2] Plaintiff contended in each Opposition that the Banks

21 Declaration is inadmissible because Chevron had initially planned to depose Banks, but canceled the

22 deposition and did not make Plaintiff aware that Banks would supply a declaration. Defendants

23 counter that Plaintiff had every opportunity to notice her own deposition of Banks, and was familiar

24 with Banks' information because Banks filed a similar declaration in the Equifax Action.

25 Declarations may be relied upon to support a motion for summary judgment. Fed. R. Civ. P.

26

27

28   [2] Dish Network's version of the Banks Declaration differs from the versions provided by the other defendants in that it contains less information. The versions provided by the other defendants are identical. The Court's paragraph references will refer to the version submitted by Chevron, HSBC, and Capital One.

1    56(c)(1)(A).  Plaintiff has not established any basis for rejecting the Banks Declaration, so the Court

2    will consider it.

3    IV.    BACKGROUND

4          A.    Factual Background

5          On November 8, 2010, Plaintiff filed the Complaint that gave rise to this cause of action in the

6    Superior Court of California, County of San Francisco.  Complaint, ¶ 1.  In her Complaint, she alleged

7    that (1) Chevron obtained copies of her credit report from Equifax on March 24, 2006 and June 16,

8    2006; (2) Dish Network obtained copies of her credit report from Equifax on March 31, 2006, July 27,

9    2006, and November 16, 2006; (3) Capital One obtained copies of her credit report from Equifax on

10   November 11, 2005, January 6, 2006, May 11, 2006, June 12, 2006, and July 17, 2006[3]; and (4)

11   HSBC obtained copies of her credit report from Equifax on November 8, 2005, November 10, 2005,

12   December 12, 2005, and March 10, 2006.  *Id*. at ¶ 15.  Plaintiff further alleged that each defendant

13   obtained those reports by representing that it was needed to extend Plaintiff a firm offer of credit.  *Id*.

14   at ¶ 14.  Finally, Plaintiff alleged that Defendants never intended to provide her with a firm offer of

15   credit, and that no firm offer of credit was ever made.  *Id*.  As a result, Plaintiff claimed that

16   Defendants violated the FCRA, 15 U.S.C. Sections 1681n-1681o, and the CCRAA, California Civil

17   Code Section 1785.20.1.  *Id*. at ¶¶ 18-20, 24-26, 30-32, 48-50.  Plaintiff maintains that she did not

18   become aware of these violations until October 26, 2010 when she received certain documents from

19   Equifax in the Equifax Action.  *Id*. at ¶ 14.

20         Equifax is a consumer reporting agency as defined by the FCRA.  Chevron Joint Statement of

21   Undisputed Facts ("Chevron JSUF"), ¶ 1; Dish Network Joint Statement of Undisputed Facts ("Dish

22   Network JSUF"); ¶ 3.[4]  Equifax maintains consumer credit files for millions of consumers, including

23   Plaintiff.  Dish Network JSUF, ¶ 4.  Equifax's customers may make a promotional inquiry.  *Id*. at ¶ 5.

24   A promotional inquiry is a request by a third party for a list of consumers that meet certain credit-

25   related criteria.  *Id*. at ¶ 7.  Promotional inquiries are identified in credit reports and Equifax's internal

---

[3] In her Complaint, Plaintiff listed the July 17, 2006 inquiry as having occurred on July 17, 2007.  She corrected that date during discovery.

[4] Each defendant documented difficulty engaging Plaintiff in creating a joint statement of undisputed facts.  After her time to file an Opposition had expired, Plaintiff filed copies of the joint statements of undisputed facts sent by each Defendant where she noted whether or not she disputed each entry.  The Court will treat the entries that Plaintiff marked "undisputed" as such, and will note the identity of the defendant in each reference.

United States District Court
Northern District of California

1    documents with the prefix "PRM."  *Id.* at ¶ 8; HSBC Joint Statement of Undisputed Facts ("HSBC

2    JSUF"), ¶¶ 19-20.  Defendants produced evidence that Equifax only provides the consumer's name

3    and address in response to a promotional inquiry so that a firm offer of credit can be extended.  Banks

4    Declaration ¶ 10.  Promotional inquiries remain listed on a consumer's credit report for twelve

5    months.  Chevron JSUF, ¶ 5; Dish Network JSUF, ¶ 11; HSBC JSUF, ¶ 21; Capital One Joint

6    Statement of Undisputed Facts ("Capital One JSUF"), ¶ 4.  Defendants have produced evidence that

7    promotional inquiries have no impact on an individual's credit score.  Banks Declaration ¶ 11.  In

8    2003, Plaintiff learned that a third party is obligated to make a firm offer of credit to all consumers

9    whose contact information it receives in response to a promotional inquiry.  Dish Network JSUF ¶¶

10   20-21.

        In support of their Motions, Defendants produced evidence that Plaintiff received copies of her

12   credit report from Equifax on July 24, 2004, July 28, 2004, March 24, 2006, July 7, 2007, July 20,

13   2007, August 14, 2007, October 18, 2007, July 23, 2008, and March 3, 2009.  Banks Declaration ¶ 15.

14   Banks explained that Equifax maintains records of each date a report is prepared and mailed in

15   response to a request by a consumer.  *Id.* at ¶¶ 13-14.  Plaintiff does not contest that she received her

16   Equifax credit reports on July 24, 2004, August 14, 2007, November 28, 2007, July 23, 2008, and

17   March 9, 2009.  Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment

18   ("Plaintiff's Affidavit"), ¶ 6.  However, Plaintiff states that she did not "request[] and receive[]" the

19   March 24, 2006, July 7, 2007, or July 20, 2007 credit reports.  *Id.* at ¶¶ 2-4.  Plaintiff's August 14,

20   2007 credit report reflects that on each of these three dates it inquired into her credit history "in

21   response to [Plaintiff's] contact with [Equifax] for a copy of [her] credit file or a research request."

22   Plaintiff's Deposition, Ex. B.

        The promotional inquiries and credit reports in this case can be charted.  Each promotional

24   inquiry is listed on the same row as the credit report it would have appeared on.  Those promotional

25   inquiries that would not have appeared on any credit report cited by the parties are listed in the fifth

26   row.

27   //

28   //

| Row | Undisputed Credit Report | Disputed Credit Reports | Chevron PRM | Dish Network PRM | Capital One PRM | HSBC PRM |
|-----|--------------------------|-------------------------|-------------|------------------|-----------------|----------|
| 1 | 8/14/2007 | - | - | 11/16/2006 | - | - |
| 2 | - | 7/20/2007 | - | 7/27/2006, 11/16/2006 | - | - |
| 3 | - | 7/7/2007 | - | 7/27/2006, 11/16/2006 | 7/17/2006 | - |
| 4 | - | 3/24/2006 | - | - | 11/11/2005, 1/6/2006 | 11/8/2005, 11/10/2005, 12/12/2005, 3/10/2006 |
| 5 | - | - | 3/24/2006, 6/16/2006 | 3/31/2006 | 5/11/2006, 6/12/2006 | - |

As to her damages, Plaintiff maintained in her deposition that she spent about $120 monitoring her credit in a broken period spanning from 2009 to 2012. Plaintiff's Deposition, 75:7-77:6; 261:15-18. In addition to checking for promotional inquiries, Plaintiff monitored her credit to ensure that her credit report was accurate and did not reflect any fraudulent activity. Capital One JSUF, ¶ 13. In her Complaint, Plaintiff also alleged emotional distress damages. Complaint, ¶¶ 22, 28, 34, 52. At her deposition, Plaintiff stated that she had not suffered damages for emotional distress from any defendant. Plaintiff's Deposition, 218:10-12; 248:16-21; 255:22-25; 265:15-17. The only evidence Plaintiff has provided in support of her damage allegations are the records of five check card purchases from "truecredit" in an amount of $11.95 each. Plaintiff's Declaration in Opposition to Chevron's Motion for Summary Judgment ("Declaration in Opposition to Chevron"), Ex. F.[5] The entries do not identify the name of the purchaser or the year in which the purchase was made. *Id.*

//

_____

[5] Plaintiff did not produce this document in conjunction with her Opposition to the other Motions or at any point during discovery.

United States District Court
Northern District of California

B.      The Complaint

In her Complaint, Plaintiff asserts three causes of action for each promotional inquiry each defendant made:

1) <u>Willful Violation of the FCRA, 15 U.S.C. § 1681n</u>:  Plaintiff alleges that each defendant willfully and wrongfully procured her consumer report under false pretenses.  Complaint, ¶¶ 18, 24, 30, 48.

2) <u>Negligent Violation of the FCRA, 15 U.S.C. § 1681o</u>:  Plaintiff alleges that each defendant negligently and wrongfully procured her consumer report under false pretenses.  Complaint, ¶¶ 19, 25, 31, 49.

3) <u>Willful or Negligent Violation of the CCRAA, Cal. Civ. Code § 1785.20.1</u>:  Plaintiff alleges that each defendant willfully or negligently used misrepresentations to obtain information from Equifax causing her mental anguish over the dissemination and use of her credit reports.  Complaint, ¶¶ 20-21, 26-27, 32-33, 50-51.

C.      The Motions

Each defendant moves to dismiss Plaintiff's claims on similar grounds.

1.      Chevron Motion

Chevron argues that it should be granted summary judgment because (1) the FCRA and CCRAA statutes of limitation had passed before Plaintiff filed her Complaint; (2) Chevron extended Plaintiff a firm offer of credit; (3) Plaintiff did not produce evidence of damages caused by Chevron's promotional inquiries; (4) Plaintiff produced no evidence that Chevron acted with the intent required to recover statutory damages under FCRA; and (5) the FCRA preempts Plaintiff's CCRAA claim.

First, Chevron contends that, upon receipt of her July 20, 2004 credit report, Plaintiff was on notice that companies were making promotional inquiries to extend credit offers.  Chevron Motion, 5.  Moreover, Chevron argues that Plaintiff became aware of Chevron's March 24, 2006 promotional inquiry when she reviewed her March 24, 2006 Equifax credit report.  *Id*. at 6.  Chevron states that the March 24, 2006 credit report is unavailable because Plaintiff threw it away or shredded it after reviewing it, and Equifax does not keep copies of the credit reports it sends to consumers.  *Id*. at 6 (citing Plaintiff's Deposition 21:2-15, 245:5-10).  Chevron does not contend that its June 16, 2006

1  inquiry would have appeared on any of Plaintiff's credit reports.  Rather, Chevron argues that a

2  reasonably diligent plaintiff would have learned of this promotional request upon completion of an

3  inquiry into all of the promotional requests appearing on Plaintiff's Equifax credit reports that

4  Chevron contends she received throughout 2006 and 2007. *Id.* at 6.  Thus, Chevron contends that the

5  two-year statute of limitations for Plaintiff's claims under the FCRA and the CCRAA began to run in

6  2007, at the latest, and expired prior to her November 8, 2010 Complaint. *Id.* at 12-14 (citing *Merck*

7  *& Co., Inc. v. Reynolds*, __ U.S. __, 130 S.Ct. 1784, 1795-1796, 176 L.Ed.2d 582 (2010)).

8  Second, Chevron produces evidence that, during the relevant time period, it used an automated

9  computer program to send solicitations to all consumers whose contact information it received from

10 Equifax in response to promotional inquiries. *Id.* at 6-8 (citing Declaration of Mike Bruheim in

11 Support of Chevron U.S.A. Inc.'s Motion for Summary Judgment ("Bruheim Declaration"), ¶¶ 5-11).

12 Chevron argues that these solicitations constituted firm offers, and attaches an exemplar. *Id.* at 14-17

13 (citing Bruheim Declaration, ¶ 11 and Exs. A and B; *Perry v. First Nat. Bank*, 459 F.3d 816, 824-825

14 (7th Cir. 2006) (a solicitation offering a credit card with a $250 limit was a "firm offer of credit"

15 under the FCRA because (1) the solicitation made it clear the consumer was preapproved; (2) the

16 interest rate was stated in a terms and conditions brochure sent with the solicitation; and (3) the card

17 could be used to make purchases at any place of business where the Visa was accepted; *Murray v.*

18 *New Cingular Wireless Servs., Inc.*, 523 F.3d 719-721-723 (7th Cir. 2008)).

19 Third, Chevron contends that Plaintiff produced no evidence of any actual damage. *Id.* at 17-

20 19.  Moreover, Chevron argues that Plaintiff's alleged costs of monitoring her credit report were not

21 caused by Chevron's alleged violation of the FCRA or the CCRAA, because Plaintiff concedes that

22 she monitored her credit reports for a variety of reasons, including ensuring their overall accuracy. *Id.*

23 at 18; *see also* Capital One JSUF ¶ 13; Dish Network JSUF ¶ 37.  Thus, Chevron contends Plaintiff

24 has failed to state a FCRA claim under a negligence theory, or a CCRAA claim under any theory. *Id.*

25 at 17 (citing 15 U.S.C. § 1681o(a)(-(b); *Trujillo v. First American Registry, Inc.*, 157 Cal.App.4th

26 628, 631, 635, 68 Cal.Rptr.3d 732 (2007)).

27

28

Fourth, Chevron argues that Plaintiff has provided no evidence of willful conduct. *Id.* at 19-20. Therefore, Chevron contends that Plaintiff cannot recover statutory damages or punitive damages under the FCRA. *Id.* at 20 (citing 15 U.S.C. § 1681n).

Fifth, Chevron contends that Plaintiff's CCRAA claim is preempted by the FCRA. *Id.* at 20-21 (citing 15 U.S.C. § 1681t(b)(1)(A) ("no requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under … subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports)).

### 2.    Dish Network Motion

Dish Network moves for summary judgment because (1) Plaintiff's claims are barred by the FCRA and CCRAA statutes of limitations; (2) Plaintiff's claims are barred because she cannot establish that Dish Network failed to send her a firm offer of credit; and (3) Plaintiff's claims are barred because she has no damages. Dish Network requested an award of attorneys' fees arguing that Ms. Banga filed her Complaint in bad faith.

First, Dish Network posits that Plaintiff was, at a minimum, aware of its final promotional inquiry, made on November 16, 2006, upon receipt of her August 14, 2007 Equifax credit report. Dish Network Motion, 10. Because Plaintiff had been aware of the FCRA regulations governing promotional inquiries since 2003, Dish Network argues that she was on notice of her prior claims against Dish Network on August 14, 2007 as well. *Id.* at 11. Moreover, Dish Network argues that she was actually aware of all of its alleged promotional July 27, 2006 promotional inquiry because she received Equifax credit reports dated July 7, 2007 and July 20, 2007. *Id.* Dish Network does not make any argument that Plaintiff was actually aware of the alleged March 31, 2006 promotional inquiry. Like Chevron, Dish Network argues that Plaintiff's claims are barred by the statute of limitations. *Id.* In the alternative, Dish Network states that Plaintiff has produced no evidence of the March 31, 2006 and July 27, 2006 promotional inquiries, so those inquiries are no longer at issue. *Id.*

Second, Dish Network argues that Plaintiff cannot establish that she did not receive a firm offer of credit. *Id.* at 12-13. Dish Network points out that Plaintiff does not recall if she ever received such an offer, but that she throws away or shreds the solicitations she receives in the mail. *Id.*

United States District Court
Northern District of California

1      Third, Dish Network argues that Plaintiff's claim is barred because she provided no evidence

2  of actual damages. *Id*. at 13-16. Dish Network states that the costs Plaintiff incurred monitoring her

3  credit report cannot be attributed to Dish Network because Plaintiff purchased the report to monitor

4  all aspects of her credit. *Id*. at 15. Dish Network contends that the FCRA and the CCRAA do not

5  provide for statutory damages, and that the CCRAA does not provide for punitive damages in the

6  absence of actual damages. *Id*. at 15-16 (citing *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th

7  Cir. 2001)). Dish Network argues that Plaintiff is not entitled to punitive damages under the FCRA

8  because she has not provided any evidence that Dish Network willfully violated the statute. *Id*. at 16.

9      Finally, Dish Network contends that it should be entitled to its attorneys' fees and costs. Dish

10  Network bases its argument on Plaintiff's admission that she received an Equifax credit report in

11  August 2007 that showed the November 16, 2006 Dish Network promotional inquiry. *Id*. at 17.

12              3.      Capital One Motion

13      Capital One moves for summary judgment because it contends (1) Plaintiff's FCRA and

14  CCRAA claims are barred by the applicable statutes of limitations; (2) Plaintiff cannot prove that

15  Capital One failed to make her a firm offer of credit; and (3) Plaintiff failed to produce any evidence

16  of damages.

17      First, Capital One contends that Plaintiff received actual notice of the majority of its

18  promotional inquiries in 2006 and 2007. Capital One Motion, 3. Specifically, Capital One argues

19  that Plaintiff received notice of the November 11, 2005, January 6, 2006 and July 17, 2006 inquiries

20  from the March 24, 2006 and July 7, 2007 credit reports. *Id*. at 3-4. Thus, Capital One argues that

21  Plaintiff was on actual notice of three out of five Capital One promotional inquiries her claims in

22  2007, more than two years before she filed her complaint in late 2010. *Id*. Moreover, Capital One

23  argues that she was on constructive notice of its May 11, 2006 and June 12, 2006 promotional

24  inquiries at that time as well. *Id*. at 4, 6-7 (citing *Merck*, __ U.S. __, 130 S.Ct. at 1795-1796, 176

25  L.Ed.2d 582).

26      Second, Capital One produced evidence that it employed a computer system programmed to

27  generate firm offers of credit to all consumers whose information is received by Capital One through

28  a promotional inquiry. *Id*. at 4 (citing Declaration of Glenn Williams in Support of Capital One Bank

(USA), N.A.'s Motion for Summary Judgment ("Williams Declaration"), ¶ 3). Because Plaintiff did not provide any evidence that Capital One failed to send her a firm offer, and because Capital One produced evidence that it would have made her a firm offer based on its business practice, Capital One argues that Plaintiff failed to make out an essential element of her claim. *Id*. at 8 (citing Plaintiff's Deposition, 234:16-235:5; *Putakowski v. Irwin Home Equity Corp.*, 423 F.Supp.2d 1053, 1063 (N.D. Cal. 2006)).

Third, Capital One states that Plaintiff has failed to produce any evidence of damages in discovery. *Id*. at 4. Capital One points out that the only actual damages Plaintiff is claiming are her credit monitoring costs. *Id*. Capital One posits that those damages cannot be attributed to it because Plaintiff monitored her credit for the broader purposes of ensuring that her credit report was accurate and did not reflect any fraudulent activity. *Id*. at 4, 9. Capital One argues that Plaintiff is not entitled to statutory damages because she produced no evidence that Capital One's alleged conduct was willful. *Id*.

### 4. HSBC Motion

HSBC argues that it is entitled to summary judgment because (1) the Plaintiff's CCRAA claims are preempted by the FCRA; (2) Plaintiff produced no evidence from which a trier of fact could reasonably conclude that HSBC acted willfully or negligently; (3) Plaintiff failed to provide evidence that HSBC acted with a willful intent sufficient to warrant statutory or punitive damages; (4) Plaintiff failed to show that HSBC caused her any damage; and (5) Plaintiff's claims under the FCRA and the CCRAA are time-barred.

First, HSBC contends that the relevant provisions of the CCRAA are preempted by the FCRA. HSBC Motion, 9-10 (citing 15 U.S.C. § 1681t(b)(1)(A)).

Second, HSBC posits that the neither the FCRA nor the CCRAA are strict liability statutes, each require either negligent or willful conduct. *Id*. at 10 (citing *Myers v. Bennett Law Offices*, 238 F.Supp.2d 1196, 1206 (D. Nev. 2002) (citing 15 U.S.C. §§ 1681n-1681o); *Olson v. Six Rivers Nat. Bank*, 111 Cal.App.4th 1, 9, 3 Cal.Rptr.3d 301 (2003) (citing Cal. Civ. Code § 1785.31)). HSBC states that Plaintiff cannot make out a claim under either statute because she produced no evidence of

United States District Court
Northern District of California

intent. *Id*. at 10-11 (citing *Chavez v. Premier Bankcard, LLC*, 2011 WL 5417107, at *1, *4 (E.D. Cal. Nov. 8, 2011)).

Third, HSBC argues that Plaintiff is not entitled to statutory damages because Plaintiff has no evidence HSBC acted willfully for the purposes of the FCRA. *Id*. at 11 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (requiring more from the nonmoving party than reliance on allegations to survive summary judgment).

Fourth, HSBC states that Plaintiff has produced no evidence of actual damages. *Id*. at 12. Moreover, HSBC argues that Plaintiff cannot prove causation because HSBC was entitled to obtain her credit report at any time to perform an account review because she had an account with them. *Id*. at 13 (citing Plaintiff's Deposition, 257:4-7). Thus, the promotional inquiries did not provide HSBC with any new information. *Id*. Therefore, HSBC contends that Plaintiff cannot recover on a FCRA claim under a negligence theory because she has not provided evidence, beyond her own conclusory allegations, to meet her affirmative burden of showing actual damages. *Id*. at 12 (citing *Myers*, 238 F.Supp.2d at 1206; *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 609-610 (7th Cir. 2005)). Moreover, HSBC argues that cannot recover on a CCRAA claim under any theory for the same reason. *Id*. at 12 (citing *Trujillo*, 157 Cal.App.4th at 637, 68 Cal.Rptr.3d 732).

Fifth, HSBC states that each of its promotional inquiries, dated November 8, 2005, November 10, 2005, December 12, 2005, and March 10, 2006, would have appeared on Plaintiff's March 24, 2006 Equifax credit report. *Id*. at 14 (citing Banks Declaration, ¶¶ 14-15; Plaintiff's Deposition 21:9-15, 89:2-15, 89:20:23, 90:15-19, Ex. B). HSBC argues that Plaintiff received this report, and that her self-serving denial is insufficient to raise a reasonable inference that she did not. *Id*. at 14-15 (citing *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201-1202 (9th Cir. 1999) (Plaintiffs' statement that they did not receive notice is insufficient to raise a genuine issue of material fact where Defendant presented evidence that notice was mailed in accordance with existing business procedure)). In the alternative, HSBC contends that Plaintiff was put on notice of allegedly improper promotional inquiries by the August 14, 2007 credit report that she concedes receiving. *Id*. at 15 (citing *Banga v. Equifax Information Servs., LLC*, 473 Fed. Appx. 712, 713 (9th Cir. 2012)). HSBC argues that she would have realized Equifax had sent her information to HSBC if she had asked

1   Equifax if any other organizations had made promotional inquiries.  *Id*.  Thus, HSBC concludes that

2   the statute of limitations expired prior to Plaintiff filing her complaint in late 2010.

3           D.      The Opposition

4           In opposition of each motion, Plaintiff makes substantially the same arguments.[6]  Plaintiff

5   argues that (1) her claims are not time-barred; (2) that no defendant sent her a firm offer of credit; (3)

6   that her Complaint sufficiently pled actual damages; and (4) that her Complaint sufficiently pled

7   punitive damages.[7]  In response to the Dish Network Motion, Plaintiff argues that her Complaint was

8   filed in good faith so attorneys' fees are not appropriate.

9           First, Plaintiff submits an affidavit stating that she did not receive the March 24, 2006, July 7,

10  2007, and July 20, 2007 credit reports from Equifax.  Plaintiff's Affidavit, ¶¶ 2-4.  She does not

11  contest receipt of the August 14, 2007 Equifax credit report.  Plaintiff's Affidavit, ¶ 6.  That credit

12  report contained one promotional inquiry, made by Dish Network.  Plaintiff's Deposition, Ex. B.

13  Plaintiff contends that she was not aware of any other violations until October 26, 2010.  Plaintiff's

14  Affidavit, ¶ 7.  She argues that her statute of limitations against Chevron, Capital One, and HSBC did

15  not begin to run until she became aware, in October 2010, they had obtained her credit reports.

16  Plaintiff's Memorandum of Points and Authorities in Support of her Opposition to Chevron USA,

17  Inc.'s Motion for Summary Judgment ("Opposition to Chevron"), 7; Plaintiff's Memorandum of

18  Points and Authorities in Support of her Opposition to Capital One Bank's Motion for Summary

19  Judgment ("Opposition to Capital One"), 10; Plaintiff's Memorandum of Points and Authorities in

20  Support of her Opposition to HSBC Bank Nevada's Motion for Summary Judgment ("Opposition to

21  HSBC"), 10-11.  She argues that her statute of limitations against Dish Network did not begin to run

22  until she was aware of the extent of its violations, because she did not learn about two promotional

23  inquiries until October 2010.  Plaintiff's Memorandum of Points and Authorities in Support of her

24  Opposition to Dish Network's Motion for Summary Judgment ("Opposition to Dish Network"), 7.

25

26

27  ───────────────────
    [6] Only Plaintiff's Opposition to the HSBC Motion was timely filed.  Nevertheless, each defendant submitted a reply brief.
    In light of this, and the fact that the Plaintiff is pro per, the Court will consider each Opposition.

28  [7] Plaintiff also argues in each Opposition that "[v]iolation of § 1681b(f) is not preempted either by FCRA nor by
    CCCRA."  It appears Plaintiff intends to contest the preemption arguments raised by Chevron and HSBC.

United States District Court
Northern District of California

Second, Plaintiff argues that no Defendant made her a firm offer of credit.  Opposition to Chevron, 3-4 (relying on inadmissible material);[8] Opposition to Dish Network, 4-5 (relying on Dish Network's statement during discovery  that the "[credit offer provided to plaintiff] never existed to the knowledge of [Dish Network]" because "there was never any requirement for [Dish Network] to provide plaintiff an offer of credit"); Opposition to Capital One, 8-9 (relying on Capital One's failure to admit or deny that it made a firm offer of credit); Opposition to HSBC, 8-9 (relying on HSBC's response to an interrogatory that "HSBC was not required … to provide a credit offer to Plaintiff on November 8, 2005").

Third, Plaintiff argues that she has pled actual damages.  She states that her right to privacy has been violated.  Opposition to Chevron, 9; Opposition to Dish Network, 10; Opposition to Capital One, 11; Opposition to HSBC, 12-13.  She does not claim any harm arising therefrom.  Next, she asserts that she has suffered $120 in membership fees to monitor her credit report.  Opposition to Chevron, 9 (citing Declaration in Opposition to Chevron, ¶ 9 Ex. F); Opposition to Dish Network, 10; Opposition to Capital One, 12; Opposition to HSBC, 13.  She does not make this claim in her affidavit, but she attaches undated records of transactions from an unidentified account to her late-filed declaration.  Declaration in Opposition to Chevron, Ex. F

Fourth, she contends that she has can demonstrate each defendant's conscious disregard for the FCRA based on each defendant's discovery responses.  Opposition to Chevron, 4 (relying on inadmissible information); Opposition to Dish Network, 6 (arguing that because Dish Network represented in discovery that it was not required to extend Plaintiff a firm offer of credit, it willfully obtained her credit report under false pretenses); Opposition to Capital One, 6-7 (arguing that because Capital One did not admit or deny that it obtained her credit report for promotional purposes, it must have obtained her credit report under false pretenses); Opposition to HSBC, 6 (arguing that because HSBC denied accessing Plaintiff's credit report during discovery, it must have obtained it under false pretenses).

//

//

_____

[8] Plaintiff included excerpts from Chevron's mediation brief in her Opposition.  Those excerpts are inadmissible and are ordered stricken from the record.

1   E.      The Reply

2   In reply, each Defendant except Capital One argues that Plaintiff has not produced any

3   evidence that they initiated promotional inquiries with Equifax.  They note that Plaintiff's Exhibit A, a

4   "frozen scan" of her credit record from 2005 and 2006 contains several dated entries containing the

5   acronym "PRM" and alpha-numeric identifiers.  They argue that Plaintiff has not provided any basis

6   for deciphering the frozen scan, or any evidence tying the alpha-numeric identifier to any defendant.

7   In addition, Chevron argues that Plaintiff's purported proof of actual damages is inadmissible

8   because it should have been disclosed during discovery.[9]  Chevron U.S.A. Inc.'s Reply to Plaintiff's

9   Opposition to Motion for Summary Judgment ("Chevron Reply"), 11-12 (arguing that the documents

10  should have been disclosed in discovery pursuant to Federal Rule of Civil Procedure 26 and that they

11  are vague, irrelevant, and lack foundation).  Even if it is considered, Chevron argues, it does not

12  establish that Chevron cause Plaintiff to suffer damages because each entry is undated.  *Id.* at 12.

13  V.      ANALYSIS

14  A.      Legal Standard Under Rule 56

15  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

16  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

17  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

18  56(c).  Summary judgment must be supported by "facts as would be admissible in evidence."  Fed. R.

19  Civ. P. 56(e).  In order to prevail, a party moving for summary judgment must show the absence of a

20  genuine issue of material fact with respect to an essential element of the non-moving party's claim, or

21  to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex*, 477

22  U.S. at 323, 106 S.Ct. 2548.  Further, "*Celotex* requires that for issues on which the movant would

23  bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of

24  material fact," that is, "that, on all the essential elements of its case on which it bears the burden of

25  proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2

26  F.3d 1112, 1116 (11th Cir. 1993).  Once the movant has made this showing, the burden then shifts to

27  the party opposing summary judgment to designate "specific facts showing there is a genuine issue for

28

[9] Plaintiff did not attach any proof of damages to her other Opposition briefs or declarations.

1    trial." *Id*. at 323.  On summary judgment, the court draws all reasonable factual inferences in favor of

2    the non-movant.  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986).

3           B.      Background Law

4                 1.     The FCRA

5                       a.     Substantive Violation

6          The FCRA was enacted to promote the equitable use of consumer credit information and to

7    ensure fairness and accuracy within the credit reporting system.  15 U.S.C. § 1681.  The FCRA only

8    allows a person to use or obtain a consumer report for certain permissible purposes.  15 U.S.C. §

9    1681b(a), (c), and (f).  These include use of the information "in connection with a credit transaction

10   involving the consumer on whom the information is to be furnished and involving an extension of

11   credit to … the consumer." 15 U.S.C. § 1681b(a)(3)(A).  Where the credit transaction is not initiated

12   by the consumer, the consumer report may only be used if, among other things, "the transaction

13   consists of a firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1)(B).  Moreover, the consumer

14   report issued in these transactions must only contain certain identifying information.  15 U.S.C. §

15   1681b(c)(2).  For the purposes of the FCRA, a "firm offer of credit or insurance" is "any offer of

16   credit or insurance that will be honored if the consumer is determined, based in the information in a

17   consumer report on the consumer, to meet the specific criteria used to select the consumer for the

18   offer." 15 U.S.C. 1681a(l).  A firm offer may be conditioned on specific criteria bearing on credit

19   worthiness that are established prior to selection of the consumer for the offer for the purpose of

20   determining whether to extend credit.  *Id*.

21         Promotional inquiries are made under the FCRA as follows.  A lender identifies criteria

22   bearing on an individual's creditworthiness and submits a request to a credit reporting agency to

23   compile a list of consumers whose credit reports meet those criteria.  The lender will use the

24   responsive list to solicit consumers by extending firm offers of credit, often in the form of

25   advertisements or fliers. *See Harris v. Database Management & Marketing, Inc.*, 609 F.Supp.2d 509,

26   513 (D.Md. 2009).

27         A consumer can assert a private cause of action for either willful or negligent noncompliance

28   with the FCRA.  15 U.S.C. §§ 1681n-o.  Under the FCRA, a plaintiff may demonstrate "willfulness"

United States District Court
Northern District of California

by showing a "reckless disregard" of statutory duty.  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56-60, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).   A defendant acts in reckless disregard if the defendant's action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Bateman v. American Multi-Cinema*, 623 F.3d 708, 711 n.1 (9th Cir. 2010) (quoting *Safeco*, 511 U.S. at 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045).  That is, the defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that is should be known." *Id*. (quoting *Safeco*, 511 U.S. at 68, 127 S.Ct. 2201, 167 L.Ed.2d 1045).

Absent a contrary congressional intent, negligence must be given its common law meaning. *Safeco*, 511 U.S. at 58, 127 S.Ct. 2201, 167 L.Ed.2d 1045.  The "standard of conduct required to avoid negligence [is] that of a reasonably prudent person under similar circumstances." *Almaraz v. Universal Marine Corp.*, 472 F.2d 123, 124 (9th Cir. 1972).  The parties have not provided any basis to depart from the common law negligence standard.  Thus, the negligence question in this case is whether a reasonably prudent company in the business of supplying credit to consumers would have known in the relevant time period that the FCRA prohibited their conduct.

            b.      Damages

If a Plaintiff can prove a willful violation of the FCRA, the plaintiff will be entitled to at least statutory damages of $100 to $1,000 for each such violation, or any actual damages.  15 U.S.C. § 1681n(a)(1)(A); *Bateman*, 623 F.3d at 711.  On the other hand, if a plaintiff can only prove a negligent violation of the FCRA, the plaintiff must also show actual damages caused by the conduct constituting a violation of the statute to make out a cause of action. 15 U.S.C. § 1681o(a)(1); *see also Banga v. Experian Information Solutions, Inc.*, 473 Fed.Appx. 699, 700 (9th Cir. 2012) (citing *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 751-52 (9th Cir. 2001) (affirming summary judgment where plaintiff "failed to offer competent evidence of damages" for a claim in which plaintiff "bore the burden of establishing the amount of actual harm")).  These actual damages can include recovery for emotional distress.  *Drew v. Equifax Information Servs., LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

c.      Statute of Limitations

i.      In General

An action under the FCRA may be brought "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.  In general, the term "discovery" includes the facts the plaintiff actually knew and those facts a reasonably diligent plaintiff would have known.  *Merck*, __ U.S. __, 130 S.Ct. at 1795-1796, 176 L.Ed.2d 582.  "[T]he ultimate burden is on the defendant to demonstrate that a reasonably diligent plaintiff would have *discovered* the facts constituting the violation… [The defendant must] demonstrate how a reasonably diligent plaintiff … would have discovered the violations." *Id*. (quoting *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012)).  The statute of limitations runs from the date a reasonably diligent plaintiff would have discovered the facts constituting the violation, not the discovery of facts that put a plaintiff on inquiry notice.  *Strategic Diversity*, 666 F.3d at 1206.  Summary judgment is defeated if the defendant fails to meet this burden and material issues of fact remain as to "whether plaintiffs knew or had reason to know of the specific" violation.  *Drew*, 690 F.3d at 1109 (citing *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998)).

ii.      The Mailbox Rule

The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been raised by the addressee at the usual time.  *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001).  It is a settled feature of the federal common law.  *Id*. (citing *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998)).  Because the mailbox rule operates as a rebuttable presumption, the court must determine whether the sender has presented sufficient evidence of mailing to invoke the presumption of receipt.  *Id*. at 963.  If the sender invokes the presumption, the putative recipient must present sufficient evidence of non-receipt to rebut the presumption.  *Id*.

United States District Court
Northern District of California

18

The presumption of receipt resolves the "swearing contest" where one party claims to have mailed a document and the other party claims it does not have the document.  *Id.* at 963.  Even so, a "specific factual denial of receipt" by the addressee is sufficient to rebut the presumption of receipt in the context of the addressee's motion for an extension of time to file an appeal made under Federal Rule of Appellate Procedure, Rule 4(a)(6).  *Id.* at 964 n.7 (citing *Nunley v. City of Los Angeles*, 52 F.3d 792, 792-793 (9th Cir. 1995).  In that context, allowing a rebuttal of the presumption of receipt by a "specific factual denial" was consistent with the statutory goal of ensuring that parties who have not received notice of the entry of judgment are not thereby deprived of their opportunity to appeal.  *Nunley*, 52 F.3d at 796.  The Ninth Circuit has not extended *Nunley* beyond its narrow context.  *Schikore*, 269 F.3d at 964 n.7.  Thus, in the ordinary common law context, the presumption of mailing can only be rebutted by actual evidence of non-receipt.  *Chavez v. Bank of America*, 2011 WL 4712204, at *6 (N.D. Cal. Oct. 7, 2011).

### 2. The CCRAA

Like the FCRA, the CCRAA limits access to consumer credit reports in transactions not initiated by the consumer.  *See* Cal. Civ. Code § 1785.11(b).  Where the consumer has not initiated or authorized the transaction, the transaction must, among other things, involve a firm offer of credit.  Cal. Civ. Code § 1785.11(b)(2); *see also* Cal. Civ. Code § 1785.20.1 (containing a statement that must be contained in any firm offer solicitation).  Where a person knowingly and willfully gains access to a file, or data from a file, other than as provided by Section 1785.11, the consumer may recover a statutory penalty.  Cal. Civ. Code § 1785.19.  In addition, "[a]ny consumer who suffers damages as a result as a result of a violation of [the CCRAA]" can recover the "actual damages, including court costs, loss of wages, attorney's fees, and … pain and suffering" caused by a negligent violation.  Cal. Civ. Code § 1785.31(a)(1).  Where the violation was willful, a consumer can also recover punitive damages.  Cal. Civ. Code § 1785.31(a)(2).  Like the FCRA, Section 1785.31 does not provide for recovery of damages in the absence of negligent or willful conduct.[10]  *See* Cal. Civ. Code § 1785.31;

---

[10] Section 1785.31 also provides for recovery when a natural person obtains a credit report under false pretenses or knowingly without a permissible purpose.  Cal. Civ. Code § 1785.31(a)(3).  That portion of Section 1785.31 is inapplicable here.

United States District Court
Northern District of California

1   *see also* 4 Witkin, *Summary of California Law* (10th ed. 2005) Sales, § 303.[11]  To state a claim under

2   Section 1785.31 for either damages or injunctive relief, the Plaintiff must show actual damages.

3   *Trujillo*, 157 Cal.App.4th at 637-638, 68 Cal.Rptr.3d 732.

4           In addition, for the purposes of this case, the CCRAA contains the same two-year statute of

5   limitations as the FCRA.  The CCRAA provides in relevant part that an action may be brought

6   "within two years from the date the plaintiff knew of, or should have known of, the violation of this

7   title, but not more than seven years from the earliest date on which liability could have arisen."  Cal.

8   Civ. Code § 1785.33.[12]

9           C.      Application of Law to Facts

10                  1.      Negligent or Willful Statutory Violation

11          Defendants are entitled to summary judgment because Plaintiff has produced no evidence to

12   demonstrate that they negligently or willfully disregarded any requirements of the FCRA or the

13   CCRAA.  Defendants would be permitted to make promotional inquiries so long as they extended

14   firm offers of credit.  Plaintiff has not produced any evidence to show that Defendants negligently or

15   recklessly disregarded this obligation.

16          Plaintiff made no attempt to collect information relating to Defendants practices in tracking

17   the contact information they received in response to promotional inquiries and in extending firm

18   offers of credit, by way of mail solicitations, to consumers.  Indeed, Plaintiff is not even certain that

19   Defendants failed to send her firm offers of credit.  Plaintiff's Deposition, 234:1-19.[13]  Both Chevron

20   and Capital One have introduced evidence that they rely on computer programs that are expected to

21   mail solicitations containing firm offers of credit to all consumers identified by a promotional inquiry.

22   There is no evidence from which a reasonable jury could conclude that any of the defendants acted

23

24   _____
     [11] Section 1785.31(b) does not clearly indicate what level of culpability is necessary to give rise to a claim for injunctive
25   relief.  Because, as discussed below, that question is not necessary to the resolution of these Motions,  the Court does not
     address it.
26   [12] Where a defendant materially and willfully misrepresented information that is material to the establishment of the
     defendant's liability to the consumer, the action may be brought any time within two years of the consumer's discovery of
27   the misrepresentation.  Cal. Civ. Code § 1785.33.
     [13] Plaintiff attempts to rely on various evasive discovery responses provided by Defendants to show that no firm offer of
28   credit was sent.  These responses claim that no promotional inquiry was ever made, so no duty to provide a firm offer of
     credit existed.  Only one discovery response, from Dish Network, goes so far as to say no firm offer of credit existed.
     Even Dish Network's response is couched in terms of limiting language:  "[T]o the knowledge of responding party."

1    negligently, much less recklessly, in failing to extend firm offers of credit to Plaintiff.  Therefore,

2    summary judgment in favor of Defendants on Plaintiff's FCRA claims and Plaintiff's CCRAA claims

3    for damages pursuant to either Section 1785.19 or Section 1785.31(a) is proper.

4                    2.    Whether Defendants Caused Plaintiff to Suffer any Actual Damages

5           Under a FCRA negligence theory or a cause of action under California Civil Code Section

6    1785.31, Plaintiff has the burden of demonstrating that she suffered actual damages caused by

7    Defendants.  Plaintiff has not raised a genuine issue of material fact on this issue.

8           The only actual damages for which Plaintiff attempts to provide any evidence are several

9    expenditures to subscribe to a credit monitoring service.  In her deposition, Plaintiff stated that she

10   paid around $120 to monitor the service between the years of 2009 and 2012.  Plaintiff's Deposition,

11   75:7-77:6; 261:15-18.  Plaintiff conceded in her deposition that she paid for the service to monitor all

12   aspects of her credit report, not just whether promotional inquiries were being made.  *Id*. at 78:23-

13   79:16.  This gave her peace of mind.  *Id*. at 79:9-16.

14          Plaintiff has only alleged that Defendants violated the statutes by failing to send her a firm

15   offer of credit.  There is no testimony that she obtained this service to make ensure that she had

16   actually received the firm offers of credit to which the promotional inquiries would have entitled her.

17   Rather, Plaintiff stated at her deposition that she throws away her "junk mail."  *Id*. at 177:1-178:3.

18   Thus, she has not offered any evidence that her decision to monitor her credit constituted damages

19   caused by Defendants' alleged failure to extend her firm offers of credit.  Nor has she alleged any

20   other damages.  On this record, the Court cannot find that she has raised a genuine issue of material

21   fact as to actual damages caused by Defendants.  Thus, summary judgment in favor of Defendants is

22   proper, as to Plaintiff's FCRA claim under a negligence theory and Plaintiff's Civil Code Section

23   1785.31 claim for either damages or injunctive relief, for this reason as well. [14]

24   //

25   //

26   //

27   //

28   _____
[14] Because the entirety of Plaintiff's CCRAA claim is without merit, the Court does not decide whether the relevant portions of the CCRAA are preempted.

United States District Court
Northern District of California

3.      Statute of Limitations

As discussed below, summary judgment is proper on a number of Plaintiff's claims because she had actual notice of the underlying promotional inquiry more than two years before she brought this action.

a.      Whether Plaintiff was on Actual Notice of the Contents of the March 24, 2006, July 7, 2007, and July 20, 2007 Equifax Credit Reports at or Near the Time they were Mailed

The parties agree that Plaintiff received the following credit reports from Equifax:  July 20, 2004, August 14, 2007, November 28, 2007, July 23, 2008, March 9, 2009.  Plaintiff's Affidavit, ¶ 6. Defendants contend that Plaintiff also received credit reports from Equifax on March 24, 2006, July 7, 2007, and July 20, 2007.  To support this contention, Defendants rely on the Banks Declaration. Banks, a representative of Equifax, stated that Equifax keeps records of when credit reports were mailed to consumers.  Banks Declaration, ¶ 13.  Equifax's records indicate that Plaintiff requested copies of her credit file on each of the contested dates.  Banks Declaration, ¶ 15.  Banks stated that each time Plaintiff requested her credit report, Equifax provided her with a current version of her credit file.  Banks Declaration, ¶ 14.   All promotional inquiries made in the preceding year would have been reflected on each credit report.  Banks Declaration, ¶ 15.  Equifax's records are sufficient to raise the presumption that the contested credit reports were mailed to the Plaintiff.  Moreover, Plaintiff testified at her deposition that she reviewed the entirety of all the credit reports she received, including the section listing the promotional inquiries.  Plaintiff's Deposition, 95:12-96:1.

To rebut the presumption, Plaintiff states in her affidavit that she "had not requested and received any credit report from Equifax on March 24, 2006, … July 7, 2007, … [or] July 20, 2007." Plaintiff's Affidavit, ¶¶ 2-4.  At her deposition, Plaintiff stated that she did not request a copy of her Equifax credit report from 2004 until August 14, 2007.  Plaintiff's Deposition, 21:21-24. Nevertheless she conceded that she obtained at least one credit report from another reporting agency during that time frame, but that she would have shredded the reports when they were no longer needed.  *Id*. at 22:9-19.  Plaintiff's bare assertion that she did not request or receive an Equifax report without any supporting evidence is insufficient to rebut the presumption of the mailbox rule.  *See*

United States District Court
Northern District of California

1   *Chavez*, 2011 WL 4712204, at \*9 (stating that it is not clear that Plaintiff's unequivocal denial of

2   receipt, standing alone, would rebut the presumption of receipt but finding that Plaintiff rebutted the

3   presumption of receipt because he stated in his declaration that the sender's customer service

4   representative told him by telephone that the company had an incorrect address in its database and had

5   been unsuccessfully trying to reach him by mail for some time).  Thus, Plaintiff was on actual notice

6   of the promotional inquiries contained in these three credit reports more than two years before

7   November 8, 2010, when she filed the present action.[15]

8                          b.      Claims Barred by the Statute of Limitations

9                                  i.      Chevron

10          Chevron argues that Plaintiff was on notice of its alleged March 24, 2006 and June 16, 2006

11   inquiries more than two years before this action was filed on November 8, 2010.

12          First, Chevron argues that Plaintiff was on notice of its March 24, 2006 promotional inquiry

13   on March 24, 2006 because she requested a credit report on that day.  But Chevron's evidence does

14   not preclude the possibility that Equifax's report was sent prior to Chevron's promotional inquiry.  On

15   summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party.

16   Thus, the Court concludes that Plaintiff was not on actual notice of Chevron's March 24, 2006

17   promotional inquiry as a result of that credit report.

18          Second, Chevron argues that Plaintiff was nevertheless on discovery notice of its promotional

19   inquiries shortly after August 14, 2007.[16]  Chevron bears the burden of demonstrating how Plaintiff

20   could have discovered the violations using reasonable diligence.  Chevron has not identified the

21   actions a reasonably diligent plaintiff would have taken on August 14, 2007 to identify outdated

22   promotional inquiries.  Rather, Chevron argues that Plaintiff was under a continuing obligation to

23   monitor her credit reports from July 20, 2004 onward because she discovered at that time that

24   companies made promotional inquiries into her credit.  This places an unreasonable burden on

25   Plaintiff.  Chevron has failed to meet its burden of establishing how a reasonably diligent Plaintiff

26

27   [15] The cutoff date, November 8, 2008, is the same under all of Plaintiff's FCRA and CCRAA theories.

     [16] Chevron also argues that Plaintiff was on notice of their violation on July 20, 2004.  But at that date, Chevron had not
28   committed the underlying acts.  Indeed, had Plaintiff investigated all promotional inquiries made prior to July 20, 2004,
     she would not have discovered any such inquiries made by Chevron.  Plaintiff was not on notice of Chevron's alleged
     violations prior to their occurrence.

1   would have discovered its violations prior to November 8, 2008.  Chevron is not entitled to summary

2   judgment on the basis of the statute of limitations.

3                                          ii.      Dish Network

4          Plaintiff does not dispute that she was aware of Dish Network's November 16, 2006

5   promotional inquiry soon after August 14, 2007 when she received a copy of her Equifax credit

6   report.  In addition, Plaintiff was on actual notice of Dish Network's July 27, 2006 inquiry when she

7   received her July 7, 2007 and July 20, 2007 credit reports.

8          Dish Network argues that, even if Plaintiff was not on actual notice of the remaining March

9   31, 2006 promotional inquiry, Plaintiff was on discovery notice of that inquiry in August 2007.  But

10  Plaintiff was not necessarily on discovery notice of Dish Network's prior violation just because she

11  was on actual notice of its later violations.  Dish Network has not demonstrated how Plaintiff,

12  exercising reasonable diligence, would have uncovered the prior violation.  Drawing all reasonable

13  inferences in favor of the Plaintiff, she was not on notice of Dish Network's alleged March 31, 2006

14  violation prior to November 8, 2008.  Thus, summary judgment, on the basis of the statute of

15  limitations, is only appropriate as to Dish Network's alleged July 27, 2006 and November 16, 2006

16  violations.

17                                         iii.      Capital One

18         Plaintiff was on actual notice of Capital One's alleged November 11, 2005, January 6, 2006,

19  and July 17, 2006 promotional inquiries based on her March 24, 2006 and July 7, 2007 Equifax credit

20  reports.  Capital One has not demonstrated that Plaintiff was on actual notice of Capital One's alleged

21  May 11, 2006 and June 12, 2006 promotional inquiries.  Capital One asserts that Plaintiff was on

22  constructive notice of those claims because she was aware of ongoing promotional inquiries but failed

23  to make any investigation.  However, Capital One makes no effort to explain how Plaintiff could have

24  discovered these violations.  Thus, drawing all reasonable inferences in favor of the Plaintiff,

25  summary judgment is only proper on the basis of the statute of limitations as to Capital One's alleged

26  November 11, 2005, January 6, 2006, and July 17, 2006 promotional inquiries.

27  //

28  //

United States District Court
Northern District of California

24

iv.     HSBC

Plaintiff was on actual notice of each of HSBC's promotional inquiries based on her March 24, 2006 Equifax credit report.  This includes the November 8, 2005, November 10, 2005, December 12, 2005, and March 10, 2006 promotional inquiries.  Therefore, summary judgment in favor of HSBC is proper on the basis of the statute of limitations as well.

4.     Dish Network's Attorneys' Fees

The FCRA provides:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. §§ 1681n(c), 1681o(b).  Dish Network argues that Plaintiff acted in bad faith by alleging in her Complaint that she did not learn Dish Network obtained a copy of her credit report until October 26, 2010 even though Dish Network's promotional inquiry appeared in the August 14, 2007 Equifax credit report Plaintiff does not contest receiving.[17]  However, this relates to only one of Dish Network's three promotional inquiries.

Next, Dish Network argues that Plaintiff knew her claims against it were all barred by the statute of limitations because her previous lawsuit against Equifax was dismissed as time-barred. However, it is not clear why a judicial determination that Plaintiff was aware of Equifax's conduct should have any impact on whether Plaintiff was aware of Dish Network's conduct.  This basis does not support a finding of bad faith.

IV.     CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of each of the defendants.  Dish Network's request for attorney's fees is denied.  Plaintiff's references to Chevron's mediation brief in her Opposition to the Chevron Motion are stricken.  ADR L.R. 6-7(b) ("[written

---

[17] Dish Network was identified as EchoStar in Plaintiff's Complaint and the November 16, 2006 promotional inquiry made by Dish Network was listed under its former legal name, EchoStar.  *See* Declaration of Shannon Picchione in Support of Dish Network's Motion for Summary Judgment, ¶¶ 2, 4-5.  Thus, confusion as to Dish Network's name cannot be the reason for Plaintiff's allegation that she did not receive notice of Dish Network's inquiry until October 26, 2010.

1  Mediation Statements] constitute confidential information as defined in ADR L.R. 6-12, must not be

2  filed and the assigned Judge shall not have access to them").  The Clerk is directed to close the file.

3       IT IS SO ORDERED.

4

5  Dated:  January 7, 2013

6

7

8  _____

9  JOSEPH C. SPERO
   United States Magistrate Judge
10